The order of the district court will be affirmed.

UNITED STATES of America, Appellee,

v.

Anne FRANCOLINO, Appellant.

No. 166, Docket 30601.

United States Court of Appeals
Second Circuit.

Argued Sept. 30, 1966.

Decided Nov. 3, 1966.

William Sonenshine, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, Brooklyn, N. Y.), for appellant.

Jerome C. Ditore, Brooklyn, N. Y., Joseph P. Hoey, U. S. Atty., Eastern District of New York, for appellee, Leon-

ard J. Theberge, Asst. U. S. Atty., of counsel.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

A grand jury in the District Court for the Eastern District of New York returned a four count indictment against Anne Francolino. The first three counts charged her with passing various $10 counterfeit notes in violation of 18 U.S.C. § 472; a fourth count charged possession of 1973 such notes in violation of the same statute. The jury found her guilty on the first three counts and not guilty on the fourth.

Defendant passed the counterfeit notes at the Floyd Bennett Store in Brooklyn during a half hour in the early afternoon of July 24, 1964. Mary Lou Patterson, a seventeen year old cashier in the housewares department, identified Anne Francolino as having approached her and having asked for four $5 bills in exchange for two $10's. Nancy Shenker, a sixteen and a half year old cashier in the record department, identified Anne as having come up while she was giving change to a customer and having sought change for a $10 bill, a request accompanied by a compliment, apparently undeserved, over Nancy's hair-do. Diane Ficocelli, a fifteen year old cashier in the millinery department, was the third to be approached. On one occasion Mrs. Francolino made a small purchase for which she paid with a $10 bill; five minutes later she requested change for another $10 bill, admiring Diane's hair-do and seeking advice how to emulate it; and shortly thereafter she changed another $10 bill, saying her husband was waiting in the car for her and she had nothing smaller. While the defendant was occupied in these endeavors, Michael Brady, manager of the housewares department, opened Miss Patterson's cash register and discovered two counterfeit $10 bills on top of the drawer. He and the cashier left the store in hot pursuit and found Mrs. Francolino walking down the block. Brady's statement to her that the $10 bills were no good elicited an expression of incredulity. She then went into a telephone booth and dialed numbers. An unidentified man, whom Mrs. Francolino claimed to be her husband but who Brady testified with some positiveness did not tally with the latter, approached and asked what the trouble was. On hearing Brady's story and his threat to "call a cop," he told Mrs. Francolino to give back the four $5 bills and take the two $10's. She and the man entered a parked 1961 black Cadillac bearing license No. KG9154, which turned out to be registered in the name of Atlantic Freightways, Inc. of which Mr. Francolino was treasurer, and drove off.

A call from Brady brought to the store Secret Service Agent Sershen, who interviewed personnel and found various counterfeit $10 notes. Sershen then went to the Francolino home and observed the Cadillac in the driveway. After summoning two local policemen, he rang the bell and was admitted to the house by defendant's mother-in-law; he told her he wanted to know who owned the car. According to Sershen, who was substantiated by one of the policemen, Joseph Francolino came half way down the stairs, said he was the owner, and invited the agent upstairs into the bedroom where Sershen observed Anne Francolino. Finding that she fitted the description given by the store personnel and seeing a leopard skin handbag they had mentioned, he placed her under arrest. According to the agent and the policeman, upon Sershen's asking for the car keys, Joseph gave them to his mother who gave them to Anne who held them out in her open hand whence the agent removed them and passed them on to a policeman. The latter opened the trunk of the car and found 1973 counterfeit $10 notes; these bore serial numbers B210759861, B81538826H, and B88902043H, the same serial numbers as notes passed to two of the cashiers. Judge Bartels denied a motion to suppress the notes as to Anne, holding the search of the car was reasonably incident to a law-

ful arrest, but granted it as to Joseph, whom Sershen had also arrested, unlawfully as the judge held. The notes were received in evidence at Anne's trial.[1] Testifying in her own defense, she did not dispute that she had passed the notes; her claim was that she had done this at the behest of her husband without knowing the notes were counterfeit.

■ Several points urged on appeal require little discussion. Our recital of the evidence of Anne's peculiar behavior during and immediately after her visit to the store is alone enough to demonstrate the lack of basis for objection on the score of insufficiency of proof. It was not error to admit a $10 note found in the cash register of the snack bar on the same day and during the same hours that Mrs. Francolino was in the store. United States v. Leitner, 202 F.Supp. 688 (S.D.N.Y.1962), aff'd, 312 F.2d 107 (2 Cir. 1963). There was ample evidence for the jury to conclude that the two $10 bills handed to Miss Patterson and later returned to defendant and never found thereafter were in fact counterfeit; and the Government's inability to produce them is inconsequential. United States v. Gersh, 328 F.2d 460 (2 Cir. 1964).

■ A closer question is the relevancy of the 1973 counterfeit bills found in the Cadillac to the three substantive counts of passing. Although these were clearly admissible on the fourth count, it is argued that this should have been dismissed for lack of proof on the motion of defense counsel and the jury instructed to disregard the 1973 notes. While the identity of serial numbers and other circumstances sufficiently connected these bills with the ones passed by the defendant, there was no direct proof of her knowing that the bills she passed had come from the hoard in the car or indeed that she knew of the latter at all. On the other hand, the evidence of her well

planned technique for note-passing, of her dash into the telephone booth upon being confronted with the counterfeit, and of her being escorted to and from the store by a man who was not her husband though she claimed he was, afforded sufficient basis for inferring she was a principal in the enterprise to warrant admission of the 1973 notes on the passing counts. Moreover, we are not convinced that this same evidence plus the fact of her apparently having regained the car keys from the unidentified man was not enough to warrant submission of the possession count at least insofar as this claimed she was an aider and abetter, cf. United States v. Lefkowitz, 284 F.2d 310, 315–316 (2 Cir. 1960), and there was no request for an instruction that if the jury did not convict on that count, it should disregard the evidence on the others.

This leaves us with the claim of error in denying the motion to suppress the notes with respect to Mrs. Francolino. Without considering other possible grounds for upholding the search of the car as to her, we think the ruling was proper both on the basis on which the judge placed it, that the search was reasonably incident to her lawful arrest, and on another, that the search was authorized because of probable cause to believe that the car was subject to seizure and forfeiture under 49 U.S.C. §§ 781–783.

■ Challenging the first ground, defendant claims that the agent lacked sufficient basis for believing her to be the person who had passed the notes, with consequent invalidity of the arrest, and that even if her arrest was lawful, a search of the car was not reasonably incident to it. We need not tarry over the first point; the description furnished the agent by Brady and the three cashiers plus the presence of the Cadillac and sight of the leopard skin bag amply supported his conclusion that Anne was the passer of the counterfeit.[2] The ques-

---

1. Apparently because of the suppression of the notes, the Government did not try Joseph who had also been indicted for illegal possession.

2. No claim was made in the district court or here that agent Sershen was not entitled to arrest Mrs. Francolino where he did on the basis that, as her mother-in-

tion whether a search of the car was reasonably incident to the lawful arrest is closer. In Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925), the Supreme Court stated that the right of search incident to a lawful arrest extended not only to the person but to "the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody * * *" In Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), a five hour search of a four room apartment was held reasonably incident to an arrest pursuant to a warrant for mailing and transporting a forged check.[3] United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), decided that this principle sustained the search of a desk, safe and file cabinets in the room where the defendant was arrested; it overruled Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), insofar as *Trupiano* had held that a search without a warrant violates the Fourth Amendment even though incident to a lawful arrest if undertaken when a warrant could practicably have been secured. Later decisions as to the scope of search incident to an arrest—Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957), invalidating a search as too extensive, and Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), upholding one as not—leave the matter about where *Harris* and *Rabinowitz* placed it. See also Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

We see no reason in principle why a car parked immediately outside a house should stand better than a room inside it which was not the place where the defendant was arrested. Drummond v. United States, 350 F.2d 983, 987 (8 Cir. 1965), cert. denied sub nom. Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 944 (1966). It would violate common sense to draw subtle distinctions between a car in a built-in garage (which, under appropriate circumstances, would appear to be covered by *Harris*), one in a detached garage, and one on the driveway. The question rather is whether there was fair basis for belief that the place searched—whether inside the house or immediately outside it—would contain instruments or fruits of the crime for which the arrest was made. Harris v. United States, supra, 331 U.S. at 152–153, 67 S.Ct. 1098. Here the agent could well have believed there was additional counterfeit to which the unidentified man might seek to gain access and the Cadillac was a likely spot to locate it.

We likewise find no basis for considering *Harris* and *Rabinowitz* to have been undermined by later decisions. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), did not present the issue of a search incident to a lawful arrest. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), which did, held that the particular search—of an automobile at a garage to which it had been towed after the arrested man had been booked

---

law testified at the suppression hearing in contradiction of the agent's testimony, he went upstairs without an invitation and despite a statement that Mr. Francolino would come down. Cf. Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690 (1940). There was no dispute that the entry into the house was with the mother-in-law's consent and did not involve the use of force. Cf. Robbins v. MacKenzie, 364 F.2d 45, 48–49 (1 Cir. 1966); United States v. Cachoian, 364 F. 2d 291 (2 Cir. 1966); ALI, Model Code

of Pre-Arraignment Procedure § 3.06 and commentary (Tent. Draft No. 1, 1966). On Sershen's testimony, corroborated by that of policeman Moyles, the trip upstairs was by invitation. If the defendant had raised the issue below, the judge would doubtless have resolved the factual controversy.

3. The purpose of the search was to find two canceled checks used as a model for the forgery; the search turned up government property which evidenced wholly different crimes.

at the police station—was too "remote in time or place from the arrest." 376 U.S. at 367, 84 S.Ct. at 883. The Court's citation of *Rabinowitz*, which had also been cited with approval in Mr. Justice Clark's opinion in Ker v. State of California, 374 U.S. 23, 41–42, 83 S.Ct. 1623 (1963), is hardly consistent with the notion that *Preston* intended to reintroduce the qualification *Rabinowitz* had repudiated, that an otherwise valid search incident to a lawful arrest would be invalid if circumstances permitted a search warrant to be obtained. Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), and James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965), add nothing to *Preston* on this score.[4] Both the Court of Appeals for the District of Columbia and this court have held that *Preston* did not "require officers lawfully arresting occupants of an automobile to make a considered and correct on-the-spot determination whether the circumstances of the arrest might render it feasible to secure a warrant before searching the car." United States v. Gorman, 355 F.2d 151, 155 (2 Cir. 1965), cert. denied, 384 U.S. 1024 (1966); accord, Adams v. United States, 118 U.S. App.D.C. 364, 336 F.2d 752, 753 (1964), cert. denied, 379 U.S. 977, 85 S.Ct. 676, 13 L.Ed.2d 567 (1965). We perceive no reason for a different rule because the person arrested was alongside the car or, as here, in a house close by.

◼ We hold alternatively that the forfeiture statute, 49 U.S.C. §§ 781–784, authorized the search. This makes it unlawful, *inter alia*, to transport or possess in any vehicle, or to use any vehicle for the transportation or possession of, contraband articles, specifically including counterfeit, § 781(b)(3). Subject to qualifications not here material, any vehicle "which has been or is being used" in violation of this prohibition "or in,

upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited." 49 U.S.C. § 782.

The leading case dealing with the effect of such a statute is Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), also frequently cited as the fountainhead for a general dispensation from the need of a search warrant where there is reasonable cause to believe that a moving car contains instruments or fruits. of crime. The *Carroll* case arose under a provision of the National Prohibition Act, 41 Stat. 305, 315 (1919), which authorized officers who discovered "any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle," to seize such liquors, take possession of the vehicle and arrest any person in charge—this in contrast with another provision expressly requiring a warrant to authorize a search for liquor in all other places. In a lengthy opinion by Chief Justice Taft, the Court held the distinction to be consistent with the Fourth Amendment.

The critical portion of the opinion begins with the decisive statement that "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause * * * [to believe] that an automobile or other vehicle contains that. which by law is subject to seizure and destruction, the search and seizure are valid." 267 U.S. at 149, 45 S.Ct. at 283–284. The Court pointed to a passage in the famous case of Boyd v. United States, 116 U.S. 616, 623–624, 6 S.Ct. 524, 29 L.Ed. 746 (1886), wherein Mr. Justice Bradley stated:

"The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the pay-

---

4. Here the search was made immediately after the arrest on the driveway outside the house in which the arrest took place. It was not too remote either in time or place under the formula in *Stoner:* "A search can be incident to an arrest only if it is substantially contemporaneous

with the arrest and is confined to the immediate vicinity of the arrest." 376 U.S. at 486, 84 S.Ct. at 891. *James* is not to the contrary; there a search of the arrestee's apartment two blocks from the place of arrest was held to be too remote to be "incident" to the arrest.

ment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo*. In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law; and the seizure of goods forfeited for a breach of the revenue laws, or concealed to avoid the duties payable on them, has been authorized by English statutes for at least two centuries past; and the like seizures have been authorized by our own revenue acts from the commencement of the government. The first statute passed by Congress to regulate the collection of duties, the act of July 31, 1789, 1 Stat. 29, 43, contains provisions to this effect. As this act was passed by the same Congress which proposed for adoption the original amendments to the Constitution, it is clear that the members of that body did not regard searches and seizures of this kind as 'unreasonable,' and they are not embraced within the prohibition of the amendment. So, also, the supervision authorized to be exercised by officers of the revenue over the manufacture or custody of excisable articles, and the entries thereof in books required by law to be kept for their inspection, are necessarily excepted out of the category of unreasonable searches and seizures. So, also, the laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, &c., are not within this category. Com. v. Dana, 2 Metc. (Mass.) 329. Many other things of this character might be enumerated."

Also citing legislation of 1790, 1793, and 1799, the *Carroll* opinion went on to say, 267 U.S. at 151, 45 S.Ct. at 284:

"Thus contemporaneously with the adoption of the Fourth Amendment we find in the first Congress, and in the following Second and Fourth Congresses, a difference made as to the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant."

Summarizing later statutes which provided not merely for the search of vehicles suspected of containing dutiable or prohibited articles but for their forfeiture, the Court said, 267 U.S. at 153, 45 S.Ct. at 285:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

The Court then considered the circumstances under which a warrantless search of a vehicle for contraband goods pursuant to such statutes could be made. It concluded that, except for border-crossings, this could be done only when "there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise." 267 U.S. at 154, 45 S.Ct. at 285.

The question that has puzzled lower courts is how far these and other broad statements in the *Carroll* opinion with respect to searches and seizures of ve-

hicles that are expressly authorized by statute which do not require a warrant were qualified by a later paragraph, 267 U.S. at 156, 45 S.Ct. at 286:

> "Such a rule fulfills the guaranty of the Fourth Amendment. In cases where the securing of a warrant is reasonably practicable, it must be used, and when properly supported by affidavit and issued after judicial approval protects the seizing officer against a suit for damages. In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause."

Although it is arguable that this modified all that had been said before, we doubt the validity of that construction as regards the legality of searching vehicles under statutes providing for the seizure of goods they are carrying or of the vehicles themselves as contraband as distinguished from searches of vehicles generally. The statement forms part of a discussion of Rev.Stat. § 970, which provided that in any "prosecution commenced on account of the seizure of any vessel, goods, wares, or merchandise, made by any collector or other officer, under any Act of Congress authorizing such seizure, judgment is rendered for the claimant, but it appears to the court that there was reasonable cause of seizure," the officer shall go free even if his judgment proved to be wrong, but the property shall be returned. We read the passage as saying that an officer can be sure of immunity even when acting under a statute only if he obtains a warrant, whereas if he acts without one he will be liable unless he succeeds in establishing probable cause, rather than as invalidating searches of vehicles for contraband made under authority of a statute and on probable cause if a court should later decide that a warrant could practicably have been obtained. This narrower reading is supported by the immediately preceding paragraph where the Chief Justice said that the owner is assured of regaining his property and of not having it used in evidence "in absence of probable cause" but "in a case showing probable cause, the government and its officials are given the opportunity which they should have, to make the investigation necessary to trace reasonably suspected contraband goods and to seize them." 267 U.S. at 156, 45 S.Ct. at 286. This is the rule which, the Court announced in the very passage under discussion, "fulfills the guaranty of the Fourth Amendment." If the Court had intended such a serious qualification as to condition the validity of the search of a vehicle pursuant to a forfeiture statute on a considered and correct determination of the impracticability of getting a warrant, it would hardly have begun its opinion with the ringing declaration, previously quoted, that "the true rule" is that if a search and seizure without a warrant are made "upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." 267 U.S. at 149, 45 S.Ct. at 284.

The right to search vehicles on reasonable cause without a warrant under statutes forfeiting the goods or vehicles transporting them has not received much subsequent attention from the Supreme Court. Husty v. United States, 282 U.S. 694, 700–701, 51 S.Ct. 240, 75 L.Ed. 629 (1931), which followed *Carroll*, is subject to the same dubieties. In United States v. Di Re, 332 U.S. 581, 586, 68 S.Ct. 222, 92 L.Ed. 210 (1948), where contraband was involved but there was no statutory authorization to search the car, the Court avoided considering the application of *Carroll* on the basis that "Assuming, however, without deciding, that there was reasonable cause for searching the car," this afforded no ground for searching the occupants. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), found *Carroll* to be undistinguishable, even though as pointed out in Mr. Justice Jackson's dissent there was no statute such as that in *Carroll*, 338 U.S. at 183–84, 69 S.Ct. at 1314–1315 and n. 1; the issue dis-

cussed was whether the officer had probable cause for the search, and the case was clearly one where obtaining a search warrant would have been impracticable, although the point was not mentioned. The searches of automobiles invalidated in the recent Supreme Court cases of *Preston* and *James*, supra, as being too remote to be incident to an arrest, were not made under the authority of forfeiture statutes. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), did not involve contraband within the forfeiture statute; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), did, but the vehicle was not subject to seizure since there was no indication that the taxi-driver knew that heroin was being transported, 49 U.S.C. 1, § 782, and the search was by state officers without authority under the federal act. See 31 C.F.R. § 401.1. Hence neither case called for or received discussion of the point.

On the other hand, courts of appeals that have considered the statute here invoked have held that a vehicle reasonably believed to be subject to seizure for having carried or for carrying contraband may be searched without a warrant, even though it was at least as feasible to secure one as was the case here. See, e. g., United States v. Haith, 297 F.2d 65 (4 Cir.), cert. denied, 369 U.S. 804, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962) [agents had keys]; Sirimarco v. United States, 315 F.2d 699 (10 Cir.), cert. denied, 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963) [car parked adjacent to sheriff's office and accused driver in jail]; Burge v. United States, 342 F.2d 408, 414 (9 Cir.), cert. denied, 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72

(1965) [accused under arrest and car impounded]; Drummond v. United States, supra, 350 F.2d at 988 [alternative assumption that car had been removed to Federal Building]; United States v. Troiano, 365 F.2d 416 (3 Cir. 1966). We see no sufficient basis for taking a different view.

In urging that we do this our brother Kaufman would distinguish *Carroll* on the basis that the statute here invoked deals with seizures rather than searches. But so did the section of the National Prohibition Act on which the Government relied in *Carroll*, see 267 U.S. at 144, 45 S.Ct. at 282; indeed, our case could be argued to be *a fortiori* since 49 U.S.C. § 782 provides for seizure and forfeiture of the vehicle whereas the provision of the National Prohibition Act before the Court in *Carroll* dealt merely with the goods.[5] As the Fourth Circuit said in United States v. Haith, supra, 297 F.2d at 68:

> "Moreover, if the seizure be lawful, as it concededly was here, and the officers have obtained exclusive possession of the vehicle, forfeited to the United States because of its use in violation of the revenue laws, and of its contraband contents, the former possessor has no remaining rights for which the Fourth Amendment lends protection. There appears no good reason why officers may not inventory the contents of an automobile when they are lawfully in possession of the vehicle and of its contents without having to obtain a warrant to search what they already lawfully possess." [6]

The *Carroll* opinion drew no distinction between statutes that provided specifically for search and others there dis-

---

5. This point could serve to distinguish so much of the recent decision in Corngold v. United States, 367 F.2d 1 (9 Cir. 1966), as concerns 19 U.S.C. § 482 relating to illegally imported merchandise. In fact Judge Browning's opinion, which treats the issue rather cursorily, proceeds on the basis of a construction that "the outer limits of authority delegated by the statute" are available only in border searches, a conclusion whose applicability

is challenged in Judge Barnes' dissent. The opinion does not reflect on the 9th Circuit's ruling in Burge v. United States, supra, under the statute here at issue.

6. We wholly fail to see what difference it can make that the search was made after the agent took possession of the car on the driveway rather than after driving it to a police garage.

cussed, such as 30 Stat. 1253, 1280 (1899) and 39 Stat. 969 (1917), which did not; in fact, the very basis of the *Carroll* rule is the distinction, taken in the *Boyd* opinion itself, as to the permissibility of the legislature's dispensing with a warrant where "the government is entitled to the possession of the property." 116 U.S. at 623, 6 S.Ct. at 528. When Congress enacted what is now 49 U.S.C. §§ 781–784 in 1939, it thus had every right to suppose the statute would be given the same effect as that in *Carroll.*

We realize that upholding the validity of the statute as so construed amounts to recognizing that Congress, in aid of its decree of forfeiture, may in effect create a ·further exception to the requirement of a search warrant, limited to vehicles that have carried or are carrying contraband and subject to the existence of reasonable cause, but without a requirement of incidence to prior lawful arrest or a showing of impracticability of obtaining a warrant due to the motion of the vehicle.[7] But we cannot recall too often that the Fourth Amendment bans only unreasonable searches and seizures. We would hesitate to decide, particularly in the light of the dictum in *Boyd* and what we deem the holding in *Carroll,* that Congress here exceeded its constitutional powers in dispensing with a search warrant in the case of vehicles which are reasonably believed and in fact are transporting or have transported forbidden goods over public highways, although a citizen's person, his home or his office could not be searched without a warrant and a more stringent rule applies even to vehicles not· carrying or having carried contraband. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Supreme Court Review 46, 65. Despite the age of the principles as to forfeiture of an offending object, see Holmes, The Common Law 20–31 (Howe ed. 1963), the due process clause of the Fifth Amendment or the Fourth Amendment may place limits on the power of Congress to brand goods as contraband and declare them or vehicles carrying them to be subject to seizure as government property. But if Congress had power to do this with respect to alcohol as held in *Carroll,* counterfeit—a gross offense to the dignity of the nation and a peril to the security of all transactions—is an *a fortiori* case.

The remaining question whether the agent had probable cause to believe the Cadillac had been used in violation of the statute, is easily answered. He had ample reason to believe it had been used to transport Mrs. Francolino to the store with the counterfeit notes she passed there and to bring her home with

---

**7.** The problem of determining the feasibility of obtaining a warrant to search a motor car when the owner or occupant has been alerted is illustrated by the facts here. Sershen's possession of a set of keys to the Cadillac by no means insured that there were no duplicates or that the counterfeit could not be removed from the car, or the car itself moved, by other methods. By the time he found the car, about eight o'clock on a Friday evening, the Secret Service and.other government offices were closed for the weekend. While this would not have precluded getting a search warrant, substantial time would have been needed, and either the policemen would have had to stand guard in the meanwhile or the Cadillac would have had to be driven off to a place of safe keeping—assuming that such a seizure would be lawful even though, under a view contrary to that here taken, a search would not have been. Husty v. United States, supra, 282 U.S. 694, 51 S. Ct. 240, indicates that if there is any requirement for showing impracticability of obtaining a warrant in cases of contraband carried in motor vehicles, this is rather easily met, see Landyski, Search and Seizure and the Supreme Court 91 (1966); indeed, it may have been here. However, we rest this alternative ground of decision on the basis that Congress has validly exercised a foreclosing judgment against the need for demonstrating impracticability in the case of a car reasonably believed to be and in fact forfeit to the Government for the carriage of counterfeit.

at least the two that Brady had made her take back. This was enough.

The judgment of conviction is affirmed.

KAUFMAN, Circuit Judge (concurring):

I agree with the majority that the search of the car was justified as "incidental to a lawful arrest." But, I have difficulty agreeing with the alternative ground for affirmance in Judge Friendly's well reasoned opinion. I do not think the search was justified by 49 U.S.C. §§ 781–789.

The statute, when read *in toto,* contains no indication that Congress intended to enlarge the number of instances in which searches without warrants would be justified. The purpose of the statute, as I see it, was to create an additional penalty for possessing contraband—forfeiture of the vehicle used to transport it—and nothing more.[1] I do not agree with the majority that the section being construed here is similar to the statute which was before the Supreme Court in *Carroll.* That statute, it should be noted, was specifically addressed to searches. It was obligatory under the Act, that a search warrant be obtained before a search of a private dwelling; but it was completely silent as to the necessity for warrants before searching a vehicle. The Supreme Court quite properly held—following the very clear legislative history—that a vehicle being driven along the highway could be searched for illegal liquor without a warrant, if probable cause existed, because of the apparent likelihood that the automobile would be promptly driven out of

jurisdiction; requiring a warrant in advance in such an instance would be sheer folly. But here, no such Congressional purpose is apparent; from all that appears the statute is designed to create only an additional penalty for transporting or having transported any kind of contraband. Moreover, contrary to the facts in *Carroll,* the car in the case before us was not moving. And I realize that anyone with keys to this car could have driven it away if the police left the scene to obtain a warrant; but, this reasoning applies with equal force to any counterfeit money which may have been hidden in the house. There, too, someone could have removed the money while the police were engaged in obtaining a search warrant. I see no reason, therefore, to make any distinction in this case between the search of the car and the house. In short, I believe the majority places too much reliance on *Carroll.*

It is true, courts have held that once an automobile is seized and forfeited the police can search it without a warrant. But, this is not our case. Here the search of the car *preceded* its seizure. The search was not ancillary to a seizure as it would have been had the car been seized, driven to a police garage pending forfeiture, and then searched. Instead, the seizure of the car was incidental—almost an afterthought—to the search of the car. To hold the search to be justified because the seizure was justified is to permit the tail to wag the dog.

In any event, as I have stated, I am confident that the search was "incidental to the lawful arrest" of Anne Francolino, and therefore I see no need to rely on the statute as an alternative ground for upholding the conviction.

1. The word "seizure" in the statute describes a method for *commencing* the forfeiture proceedings. Although it is often found together with the word "searches," there is no reference to searches in this statute, and I think it unwarranted to read this word into the statute.