UNITED STATES of America,
v.
McKenzie LEWIS, Defendant.
No. 69 Cr. 294.

United States District Court
S. D. New York.
Sept. 3, 1969.

---

4. The cited case reviews and analyzes the pertinent principles and authorities.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, New York City, Atty. for U. S., Sterling Johnson, Jr., Asst. U. S. Atty., of counsel.

Michelman & Michelman, New York City, for defendant, Harvey J. Michelman, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

This is primarily a motion under Fed. R.Crim.P. 41(e) to suppress heroin taken from the defendant's Cadillac automobile on the night of November 25–26, 1968. (Two additional, and trivial, branches of the motion are noted at the end of this opinion.) At an evidentiary hearing, two narcotics agents and a woman in whose apartment defendant was arrested gave testimony. Based on the record thus made, I find the pertinent facts to be as follows:

On the night of November 25, 1968, Narcotic Agents White, Rivera and Einbinder, along with others, were collaborating in surveillance and undercover activities in New York City relating to suspects Macargo and Williams. At about 8:30 p. m. on that evening, Macargo and Williams came out of a bar at 1471 First Avenue, entered a 1962 Pontiac and drove to W. 125th Street, where they entered the Lido Bar. Leaving the bar in a little while, they drove to 231 E. 126th St. and entered the apartment building at that address. About 9:30 p. m. the defendant Lewis arrived in a 1962 Cadillac, parked in front of the same building and entered. About a half hour later, Lewis came out, went to the northwest corner of 126th St. and 2d Avenue, looked around the street, entered a restaurant, made a telephone call, and then returned to the building at 231 E. 126th St.

At approximately 10:30 p. m., Lewis, Macargo and Williams came out, entered Lewis's Cadillac, drove to the Lenox Lounge at 288 Lenox Avenue, and visited in that lounge for about 15 minutes. Then they returned to the Cadillac and drove to the Silver Moon Bar where only Lewis, who was driving, entered for a stay of about 10 minutes. Lewis returned to the automobile and they drove to the vicinity of 75 Macombs Place, where, after a short time, a 1968 Cadillac arrived and parked next to Lewis's. Lewis alighted from his automobile, walked to the passenger window of the other car, and, after a conversation with the driver, reached in and handed something to the driver. Someone in the 1968 automobile handed an object to Lewis, and the surveilling agent, White, saw Lewis place something in his pocket. As he returned to his own car, Lewis grasped the outer portion of that pocket and clutched something, holding it away from his body.

Lewis and the others then drove a circuitous route to 124th Street and First Avenue, where Lewis dropped Macargo and Williams. Then he returned to 231 E. 126th Street (at about 12:30 a. m.) and went to the apartment on the fifth floor in which Mary Anderson lived with her five children.

At about one a. m., shortly after they had been dropped off by Lewis, Macargo and Williams negotiated a sale of heroin to Agents Rivera and Einbinder. Promptly after the completion of the sale, the two sellers were arrested. Immediately after the arrest Einbinder reported it by radio to Agent White, who had been left on surveillance duty at

231 E. 126th Street. Upon receiving this word, White, according to his testimony, "seized" the Cadillac of Lewis, meaning evidently that he proceeded to keep watch over it pending the arrival of the other agents. Upon such arrival within a few minutes, White left Agent Rivera in charge of the Cadillac and went with the others to the fifth floor apartment. The agents knocked, and the door was opened by a woman identified by one of the agents as Mary Palmer, who is, according to her testimony, the witness sworn as Mary Anderson. Lewis was sitting on a couch, and was visible from the doorway at the time. The agents entered, and arrested and searched him. They found the registration of the 1962 Cadillac and its keys. Agent White gave these to Einbinder, who proceeded downstairs to report the arrest and deliver the keys to Agent Rivera. Together, Rivera and Einbinder opened the car, searched it and found in the glove compartment the eight packages of heroin which are the subject of defendant's motion.

Upon the foregoing facts, contrary to defendant's contention, I find there was probable cause for his arrest. It is undisputed that the original subjects of the investigation and surveillance were Macargo and Williams. As events developed, however, there was obviously weighty reason to believe that defendant Lewis was a collaborator in the illegal dealings in heroin which culminated in the sale to the undercover agents. Once that sale had been made, placing it in the context of the evening's events, there was compelling evidence warranting the arrest of Lewis, which was promptly accomplished.

This conclusion, at the time of our evidentiary hearing (on June 4, 1969), seemed to justify the search of the Cadillac as properly incident to the arrest under the first (and unanimous) ground for decision in United States v. Francolino, 367 F.2d 1013 (2d Cir.), cert. denied, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1966). Then, on June 23, 1969, the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed. 2d 685, was announced. While that case involved the search of a private dwelling, clearly different from a motor vehicle in terms of the Fourth Amendment's concerns, see, e. g., Preston v. United States, 376 U.S. 364, 366–367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), it declared broadly that "[t]he only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other." 395 U.S. at 766, 89 S.Ct. at 2042. More specifically, *Chimel* overruled Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), both foundation stones for the primary holding in *Francolino*. The result, to say the least, was to cast serious doubt on the government's claim that the warrantless search of the automobile here in question could be sustained as incident to defendant's lawful arrest.

I have concluded, however, that it is unnecessary to estimate here and now how much, if any, of the first ground of decision in *Francolino* has survived. For the alternative holding of that case, sustaining the search of an automobile because there was probable cause to believe the vehicle subject to seizure and forfeiture as a carrier of contraband, is applicable here. See 367 F.2d at 1016, 1018–1022. This ground of decision—as reflected in the majority opinion in *Francolino* and in the concurring opinion withholding assent to the alternative position, 367 F.2d at 1023—may be somewhat debatable at higher levels. But it would appear to remain intact, controlling, and, if it is permissible to say so, entirely convincing for this court. It becomes, therefore, the basis upon which defendant's motion to suppress will be denied.[1]

---

1. Foregoing the attempt to judge precisely what may remain of the first ground of *Francolino*, I find it similarly appropriate to refrain from conjuring with

To go no further than the opinion in *Chimel* itself, the Court there was careful to distinguish and leave undisturbed the proposition applied alternatively in *Francolino* and exclusively here. It said (395 U.S. at 764 n. 9, 89 S.Ct. at 2040):

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543; see Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879."

See also Dyke v. Taylor Implement Co., 391 U.S. 216, 221, 222, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

This case falls readily within the area thus preserved. The facts already recounted; supplying probable cause for the arrest, created at least equally probable cause to believe the automobile was carrying heroin, especially after a search

of defendant and the apartment in which he was arrested disclosed none. The vehicle, "reasonably believed to be and in fact forfeit to the Government," *Francolino, supra,* 367 F.2d at 1022 n. 7, under 49 U.S.C. § 782,[2] could not responsibly have been thought to be safely immobile where it was. It was subject to seizure and search no less than the vehicles involved in Carroll v. United States, *supra,* and *Francolino.*

We turn to subjects more speedily covered. Defendant moves in sweeping and uninformative terms to suppress "any statements, admissions or confessions" he may have made. This application is denied without prejudice to renewal if and when any such materials come to be tendered as evidence.

Also denied is the similarly vague and undocumented application for dismissal of the indictment "upon the ground that the evidence presented to the grand jury * * * was illegal and inadmissable [*sic*] and that the admissable [*sic*] evidence before the grand jury was insufficient * * *."

In sum, the motion is in all respects denied. So ordered.

---

difficult questions about the extent to which *Chimel* should be deemed only "prospective" in operation. Under Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which seems at first glance the closest analogy, the new rule governing searches would govern at least cases still on trial or on direct appeal, and would thus be available to the defendant in this case. But *Linkletter,* the first clear experiment in prospectivity, has been followed by different, and more restrictive, measurements for the retrospective reach of decisions changing essentially "prophylactic" rules. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (applicable only where trial begins after new rule announced); DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (same); Jenkins v. Delaware, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253 (1969) (new rule not appli-

cable to retrials begun after date of decision where original trial started before decision); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) (applicable only to trials in which the evidence is sought to be introduced after new rule announced); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (applicable only where operative facts occurred after new rule announced); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) (same). It has become arguable that a decision like *Chimel* should apply only to future searches and seizures. Cf. United States ex rel. Mishkin v. Thomas, 282 F.Supp. 729, 732–733 (S.D.N.Y.1968). Except to note the thought as an interesting one for some other time, I express no view on it.

2. As was the heroin under 21 U.S.C. § 173.