**UNITED STATES of America,
Appellant,**

v.

**George Anthony PAPPAS, Defendant,
Appellee.**

No. 78–1474.

United States Court of Appeals,
First Circuit.

Argued March 8, 1979.

Decided June 14, 1979.

Elliot D. Lobel, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellant.

Ann Lambert Greenblatt, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for defendant, appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, and GIGNOUX, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

George Pappas was charged in the district court with having violated a federal firearms law, 18 U.S.C. §§ 922(a)(3), (h)(1). The violations alleged stemmed from a federal agent's discovery of a firearm during a search of Pappas' car after the car had been seized pursuant to a forfeiture statute, 21 U.S.C. § 881(b)(4).[1] The district court granted Pappas' motion to suppress the firearm. This appeal from that ruling involves the constitutionality of the warrantless seizure of Pappas' car pursuant to the forfeiture statute and of the subsequent warrantless search.

On August 17, 1976, an agent of the Drug Enforcement Administration (DEA) observed defendant Pappas and one Harold Richman arrive in Pappas' car at a location in Boston, whereupon Richman left the car, sold cocaine to two government informants,

---

* Of the District of Maine, sitting by designation.

1. 21 U.S.C. § 881 provides in relevant part,
    "(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
    (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
    (2) All raw materials, products, and equipment of any kind which are used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

    .    .    .    .    .

    (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any man-

ner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2)    .    .    ..
    (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—

    .    .    .    .    .

    (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter."

returned to the car, and was driven away by Pappas. On August 21, 1976, another cocaine transaction took place and Pappas was observed driving away in the same car after having received a quantity of money.[2] Eleven months later, on July 18, 1977, Pappas and twelve other persons were indicted for narcotics dealings with the same two government informants. Federal agents obtained warrants for the arrest of those indicted. The agents sought to arrest all thirteen simultaneously, but could not locate Pappas. Those located were arrested early in the morning of July 20, at which time a DEA agent seized Pappas' car without a warrant from a common parking area in front of the building where Pappas lived. The agent informed Pappas' wife of the arrest warrant for her husband, obtained the car keys from her, and allowed her to remove personal belongings from the car's glove compartment and trunk before removing the car. The car was taken to DEA headquarters in Boston, where, two days later, a DEA agent searched it and in the trunk discovered the firearm later suppressed by the district court.

Pappas argues in favor of suppression that the warrantless seizure of the car was unconstitutional[3] and, alternatively, that even if the seizure was proper the subsequent search violated the fourth amendment. We consider the two arguments in turn.

# I

■ The seizure of Pappas' car presents the question whether evidence obtained as the fruit of a warrantless seizure of an automobile subject to forfeiture by statute is admissible in a criminal proceeding. For the evidence to be admissible, the warrantless seizure must be justified by an exception to the fourth amendment's warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290

(1978); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

A number of courts have recognized an exception to the warrant requirement for the seizure of automobiles subject to statutory forfeiture. *See Cady v. Dombrowski*, 413 U.S. 433, 452–53, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (Brennan, J., dissenting). A leading case is *United States v. Francolino*, 367 F.2d 1013 (2d Cir. 1966), *cert. denied*, 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967), which upheld a warrantless automobile search on the ground that the federal agent had probable cause to believe that the car was subject to seizure and forfeiture under 49 U.S.C. §§ 781–83 for having been used to transport counterfeit currency. 367 F.2d at 1018–22. Judge Friendly, speaking for the court, stated,

"We realize that upholding the validity of the statute as so construed amounts to recognizing that Congress, in aid of its decree of forfeiture, may in effect create a further exception to the requirement of a search warrant, limited to vehicles that have carried or are carrying contraband and subject to the existence of reasonable cause, but without a requirement of incidence to prior lawful arrest or a showing of impracticability of obtaining a warrant due to the motion of the vehicle. But we cannot recall too often that the Fourth Amendment bans only unreasonable searches and seizures. We would hesitate to decide, particularly in the light of the dictum in *Boyd [v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886),]* and what we deem the holding in *Carroll [v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)]*, that Congress here exceeded its constitutional powers in dispensing with a search warrant in the case of vehicles which are reasonably believed and in fact are transporting or have transported forbidden goods over public highways, although a citizen's per-

---

2. These incidents are described in more detail in our recent opinion in *United States v. Richman*, 600 F.2d 286 at 290–291, 297 (1st Cir. 1979).

3. Pappas does not argue that seizure of the car was not in compliance with the actual terms of 21 U.S.C. § 881(b). *Compare United States v. One 1972 Chevrolet Nova*, 560 F.2d 464, 468–70 (1st Cir. 1977).

son, his home or office could not be searched without a warrant and a more stringent rule applies even to vehicles not carrying or having carried contraband. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Supreme Court Review 46, 65."

*Id.* at 1022 (footnote omitted). Since *Francolino,* the Second Circuit has continued to approve warrantless seizures of automobiles subject to forfeiture for having been used to carry contraband. *United States v. Capra,* 501 F.2d 267, 280 (2d Cir. 1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975) (forfeiture under 21 U.S.C. § 881); *see United States v. Zaicek,* 519 F.2d 412 (2d Cir. 1975); *United States v. La Vecchia,* 513 F.2d 1210, 1215–17 (2d Cir. 1975). Other circuits have followed *Francolino* as well. *United States v. White,* 488 F.2d 563 (6th Cir. 1973); *O'Reilly v. United States,* 486 F.2d 208 (8th Cir.), *cert. denied,* 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973) (forfeiture under 21 U.S.C. § 881); *United States v. Stout,* 434 F.2d 1264 (10th Cir. 1970); *United States v. Troiano,* 365 F.2d 416 (3d Cir.), *cert. denied,* 385 U.S. 958, 87 S.Ct. 396, 17 L.Ed.2d 303 (1966); *Sirimarco v. United States,* 315 F.2d 699 (10th Cir.), *cert. denied,* 374 U.S. 807, 83 S.Ct. 1696, 10 L.Ed.2d 1032 (1963). To our knowledge, only the Ninth Circuit is not in accord. *United States v. McCormick,* 502 F.2d 281 (9th Cir. 1974). *See also Melendez v. Shultz,* 356 F.Supp. 1205 (D.Mass.), *appeal dismissed for lack of jurisdiction,* 486 F.2d 1032 (1st Cir. 1973).

Two fairly recent Supreme Court decisions suggest support for the majority rule in the circuits. In *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), police officers seized an automobile subject to forfeiture under a state statute because it had been used in narcotics transactions, and conducted a warrantless search of the car a week later. The Court held the search to be constitutional. The focus of the Court's opinion was the validity of the search once the car was in police custody, rather than the propriety of the initial seizure of the vehicle. But, the Court treated the car as "validly held," *id.* at 62, 87 S.Ct.

788, without inquiring whether the car's seizure, which apparently was warrantless, was within an exception to the fourth amendment warrant requirement. Although the Court did not expressly address the constitutionality of the car's seizure, it seemed to assume implicitly that the state forfeiture statute made the seizure proper. In *Coolidge v. New Hampshire,* 403 U.S. 443, 464 n. 21, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971), a plurality of the Court explained,

> "In *Cooper,* the seizure of the petitioner's car was mandated by California statute, *and its legality was not questioned.* The case stands for the proposition that, given *an unquestionably legal seizure,* there are special circumstances that may validate a subsequent warrantless search." (Emphasis added.)

*See also Chambers v. Maroney,* 399 U.S. 42, 49–50 n. 7, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Appellee, along with the Ninth Circuit in *United States v. McCormick,* 502 F.2d at 284, reads the quoted language to suggest that the issue of the seizure's legality was not presented or considered in *Cooper.* The statement could, however, as easily be read to mean that the seizure in *Cooper,* because pursuant to a forfeiture statute, was unquestionably legal. It is difficult to believe the legality of the forfeiture would not have been considered if the Court had doubts on the subject. Were the car's seizure illegal, it would have tainted the search that *Cooper* upheld. *Cf. South Dakota v. Opperman,* 428 U.S. 364, 368–69, 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski,* 413 U.S. at 442–43, 446–47, 93 S.Ct. 2523; *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (legality of searches of automobiles in police custody premised in part on legality of the custody).

More recently, and subsequent to *United States v. McCormick,* the Supreme Court decided *G. M. Leasing Corp. v. United States,* 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). There the Court upheld against a fourth amendment challenge the warrantless seizure by federal agents of

several automobiles subject to tax liens under the Internal Revenue Code. While the Court's analysis was conclusory, it was evidently based upon the owner's reduced expectation of privacy and the government's claim of property right:

> "The seizures of the automobiles in this case took place on public streets, parking lots, or other open places, and did not involve any invasions of privacy. In *Murray's Lessee v. Hoboken Land & Improv. Co.,* 18 How. (59 U.S.) 272 [15 L.Ed. 372] (1856), this Court held that a judicial warrant is not required for the seizure of a debtor's land in satisfaction of a claim of the United States. The seizure in *Murray's Lessee* was made through a transfer of title which did not involve an invasion of privacy. The warrantless seizures of the automobiles in this case are governed by the same principles and therefore were not unconstitutional. See also *Hester v. United States,* 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898] (1924) (liquor seized in open field)."

*Id.* at 351–52, 97 S.Ct. at 628 (footnote omitted). *G. M. Leasing* provides strong support for the *Francolino* line of cases while at the same time suggesting that valid warrantless seizures of automobiles subject to forfeiture may be limited to public places.

In *United States v. One 1972 Chevrolet Nova,* 560 F.2d 464, 468 n. 2 (1st Cir. 1977), we referred to *G. M. Leasing,* saying "we decline *here* to rely upon it as further expanding the automobile exception." (Emphasis added.) We instead found the warrantless seizure there in issue to fall within the automobile exception's narrowest possible definition, that set forth in the dissenting opinion in *Cardwell v. Lewis,* 417 U.S. 583, 596, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), 560 F.2d at 467–68, & n. 1. It is true that the significant governmental interest

in collecting tax revenue may affect fourth amendment analysis. *See G. M. Leasing Corp. v. United States,* 429 U.S. at 352 n. 18, 97 S.Ct. 619. But *G. M. Leasing's* reasoning seems based more on consideration of privacy expectations than on policies unique to the tax levy context. *See id.* at 351–52 & n. 18, 97 S.Ct. 619. The case thus seems relevant if not, perhaps, conclusive in contraband forfeiture situations such as the one at bar.

*G. M. Leasing,* moreover, is not so out of line with the automobile exception as now conceived to suggest it be limited to its facts or tax levy context. The Supreme Court's decisions defining the scope of the automobile exception form "something less than a seamless web." *Cady v. Dombrowski,* 413 U.S. at 440, 93 S.Ct. at 2527. The narrowest possible scope, as outlined in the *Cardwell v. Lewis* dissenting opinion and applied by us in *One 1972 Chevrolet Nova,* is that the exception applies where

> "(1) there [is] probable cause to believe that the car contains articles the officers are entitled to seize, (2) there [is] a reasonable likelihood that the vehicle could or would be moved out of the locality if the search did not occur within a short time after the car had been discovered, and (3) the probable cause [is] not discovered until so late a time as to prevent the officers from securing a warrant earlier."

560 F.2d at 467. The second and third requirements of this definition, which center on the exigency of the situation, may not be essential.[4] The four-justice *Cardwell* plurality disputed the requirement that a warrant be unobtainable, 417 U.S. at 595–96, 94 S.Ct. 2464, and the Court has upheld warrantless searches under circumstances providing ample opportunity to obtain a warrant. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct.

---

**4.** Our application of the *Cardwell* dissent test in *One 1972 Chevrolet Nova* did not reflect a view on our part that that test was authoritative. We recognized that the *Cardwell* dissent stated the narrower of two competing tests, determined that the seizure under review satisfied that test, and concluded that a fortiori the

seizure would fall within the automobile exception however it might be more broadly defined. We expressly did "not consider whether the automobile exception might have the broader scope ascribed to it by the *Cardwell* plurality opinion." 560 F.2d at 467 n. 1.

2523, 37 L.Ed.2d 706; *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. In addition, the Court has recognized that warrantless searches may be proper even where there is no immediate danger that the car will be removed from the jurisdiction. *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *South Dakota v. Opperman,* 428 U.S. at 367, 96 S.Ct. 3092; *Cady v. Dombrowski,* 413 U.S. at 441–42, 93 S.Ct. 2523. The automobile exception as currently understood would therefore seem to rest less on the exigency of the specific situation than on "the diminished expectation of privacy which surrounds the automobile." *United States v. Chadwick,* 433 U.S. at 12, 97 S.Ct. at 2484; *see South Dakota v. Opperman,* 428 U.S. at 367–69, 96 S.Ct. 3092; *Cady v. Dombrowski,* 413 U.S. at 441–42, 93 S.Ct. 2523; *Cardwell v. Lewis,* 417 U.S. at 589–91, 94 S.Ct. 2464. *See generally United States v. Moore,* 562 F.2d 106, 111–13 (1st Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). On that premise, it would be understandable that where the car owner's expectation of privacy is least—*i. e.,* when the car is left parked in a public place—and the government's interest is most basic—*i. e.,* a statutory property right—a warrantless seizure could generally be sustained on a showing of probable cause alone.

Turning to the case before us, the seizure of Pappas' car was made with probable cause to believe that it was subject to forfeiture under 21 U.S.C. § 881. *Compare One 1972 Chevrolet Nova,* 560 F.2d at 468. Although the DEA agents had ample time after probable cause arose to secure a warrant for the seizure, the situation had some degree of exigency. The car was readily movable, Pappas' wife had access to it, and Pappas himself was still at large; once the related arrests and automobile seizures were made they would be "alerted to police intentions" and have a heightened motivation to remove the car "from official grasp." *Cardwell v. Lewis,* 417 U.S. at 590, 94 S.Ct. 2464. As far as the record indicates, the car was seized from a "common parking lot" at the multiple building apartment complex in which Pappas lived. Pappas asserts for the first time on appeal that this was not a "public" area because it was private property to which access was to some degree limited. However, Pappas introduced no evidence to this effect in the district court, despite an evidentiary hearing, nor any other evidence tending to show that the common parking lot was an area in which Pappas had a reasonable expectation of privacy. Particularly since the proceedings below postdated the Supreme Court's decision in *G. M. Leasing,* Pappas cannot claim unfair surprise and is bound both by the present record and by his failure to raise the issue in the district court. We conclude that under these circumstances the warrantless seizure of Pappas' car was constitutionally permissible.[5]

In reaching the opposite conclusion, the district court relied on *Berkowitz v. United States,* 340 F.2d 168 (1st Cir. 1965). In that case we declined to apply the rule of *Interbartolo v. United States,* 303 F.2d 34 (1st Cir. 1962)—that an illegal seizure does not bar forfeiture[6]—in a case where the seizure was legal but rather that the seizure even if illegal would not bar forfeiture. *See* 303 F.2d at 37–39; *Strong v. United States,* 46 F.2d 257 (1st Cir.), *cert. dismissed,* 284 U.S. 691, 52 S.Ct. 27, 76 L.Ed. 1583 (1931); *United States v. One 1956 Ford Tudor Sedan,* 253 F.2d 725, 727 (4th Cir. 1958); *United States v. Eight Boxes Containing Various Articles,* 105 F.2d 896 (2d Cir. 1939). *But see Melendez v. Shultz,* D.C., 356 F.Supp. 1205. As the instant case is not an action for forfeiture, we do not consider the continuing vitality of *Interbartolo. See generally One 1972 Chevrolet Nova,* 560 F.2d at 467.

5. We emphasize, if further emphasis were needed, that we do not suggest that an automobile subject to forfeiture may be seized "in the unbridled discretion of an officer." *Melendez v. Shultz,* 356 F.Supp. 1205, 1210 (D.Mass.), *appeal dismissed for lack of jurisdiction,* 486 F.2d 1032 (1st Cir. 1973). An officer's discretion is bridled by the requirement that he have probable cause to believe that the automobile is subject to forfeiture.

6. *Interbartolo* does not directly apply to the issue of the legality of the seizure because the basis of its holding, although not entirely unambiguous, seems not to have been that the

"government's unconstitutional conduct went to the heart of the apprehension." *Berkowitz v. United States,* 340 F.2d at 174 (Aldrich, C. J., concurring). Specifically, in *Berkowitz* we refused to enforce the forfeiture of personalty that had been discovered only pursuant to an unlawful arrest, while in *Interbartolo* we allowed forfeiture regardless of the illegality of the object's seizure where knowledge of its existence and illegal use had been discovered by entirely lawful means. We think the most *Berkowitz* can stand for in the current context is that where the probable cause for the seizure is itself the fruit of a poisonous tree, then the seizure is impermissible unless probable cause is also raised through independent untainted means. *Compare United States v. Whitlock,* 418 F.Supp. 138, 141–42 (E.D.Mich.1976), *aff'd mem.,* 556 F.2d 583 (6th. Cir. 1977). *See generally Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Here there has been no suggestion that either the observation of the cocaine transactions or the discovery of Pappas' car at his apartment was in any way illegal.

Finally, our conclusion does not as Pappas argues contravene the principle that "no Act of Congress can authorize a violation of the Constitution." *Almeida-Sanchez v. United States,* 413 U.S. 266, 272, 93 S.Ct. 2535, 2539, 37 L.Ed.2d 596 (1973). To sustain the seizure it is not necessary to suppose that a federal statute can validate the warrantless seizure of privately-owned property. Section 881(a)(4) establishes a property interest in favor of the government in vehicles used to transport or facilitate the sale of narcotics; a property interest of this sort, created by operation of law, places the agents of the government in a different position constitutionally *vis-a-vis* the forfeit vehicle than would otherwise be true.

## II

■ Two days after the car was seized and taken to DEA headquarters, a DEA agent searched the car without a warrant and in the trunk discovered the weapon suppressed by the district court. This in-custody search of the car, which had been validly seized, was constitutionally permissible. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730; *United States v. Johnson,* 572 F.2d 227 (9th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978); *see South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706; *United States v. McCambridge,* 551 F.2d 865, 868–71 (1st Cir. 1977).

■ Pappas argues that the search was improper because it was an investigatory, rather than an inventory, search. Because we find Pappas' characterization unsupported by the record, we need not decide whether it would affect the search's legality. *See generally United States v. Johnson,* 572 F.2d at 230–34. The uncontradicted testimony of the DEA agent who conducted the search was that it was an inventory "pursuant to regulations in the Agent's Manual," and the magistrate found the search to have been a non-investigative inventory. Pappas cites no facts in the record suggesting that the purported inventory was in fact "a pretext concealing an investigatory police motive." *South Dakota v. Opperman,* 428 U.S. at 376, 96 S.Ct. at 3100. Pappas also argues that the doctrine permitting in-custody automobile searches applies only to local police and not federal law enforcement officers. We decline to make such a distinction. The interests underlying the doctrine—protection of the police from danger and against disputes over lost or stolen property, and protection of the owner's property while it is in custody, *id.* at 378, 96 S.Ct. 3092 (Powell, J., concurring)—seem as apposite in the federal as in the local context. *See United States v. Johnson,* 572 F.2d 227.

*The order of the district court is vacated.*