**UNITED STATES of America,
Appellant,**

v.

**ARTICLES OF HAZARDOUS SUB-
STANCE, etc., and Troxler Ho-
siery Co., Inc., Appellees.**

**UNITED STATES of America, Appellee,**

v.

**ARTICLES OF HAZARDOUS SUB-
STANCE, etc., and Troxler Ho-
siery Co., Inc., Appellants.**

**In re UNITED STATES of
America, Petitioner.**

**Nos. 78–1066, 78–1110 and 78–1142.**

United States Court of Appeals,
Fourth Circuit.

Argued March 6, 1978.
Decided Oct. 30, 1978.

Robert B. Nicholson, Atty., Dept. of Justice, Washington, D. C. (Andrea Limmer, Atty., Dept. of Justice, John H. Shenefield, Asst. Atty. Gen., Theodore J. Garrish, Gen. Counsel, Norman Barnett, Sol., Earl A. Gershenow, Atty., Consumer Product Safety Com'n, on brief), for U. S. in Nos. 78–1066 and 78–1110.

Norman B. Smith, Greensboro, N. C. (Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., on brief), for Articles of Hazardous Substance, etc. in Nos. 78–1066 and 78–1110.

Richard H. Gimer, Richard G. White, Santarelli & Gimer, Washington, D. C., on brief, for amicus curiae American Yarn Spinners Ass'n, Inc.

Before WINTER, Circuit Judge; Field, Senior Circuit Judge, and WIDENER, Circuit Judge.

FIELD, Senior Circuit Judge:

On January 18, 1978, the United States, acting on behalf of the Consumer Products Safety Commission (CPSC) under the Federal Hazardous Substances Act (FHSA), as amended, 15 U.S.C. §§ 1261, *et seq.,* obtained an ex parte warrant of seizure and condemnation from the Clerk of the District Court for the Middle District of North Carolina, directing the seizure of quantities of several different types of children's sleepwear which had been treated with TRIS, a flame retardant, technically known as (2, 3 Dibromoprotyl) phosphate. The sleepwear was being offered for sale by Troxler Hosiery Company, Inc., at its place of business in Greensboro, North Carolina, and in its complaint the Government alleged that the sleepwear was a banned hazardous substance under 15 U.S.C. § 1261(q)(1)(A). As authority for the seizure the Government invoked 15 U.S.C. § 1265 which authorizes the seizure of a banned hazardous substance "while held for sale". Troxler filed a motion to quash the warrant of seizure which, after a hearing, was granted by the district court. The Government has appealed.

In its motion to quash, Troxler contended that CPSC could proceed against TRIS-treated goods only after adopting an appropriate regulation pursuant to 15 U.S.C. § 1261(q)(1)(B) and § 1261(q)(2), and that

the seizure violated Troxler's constitutional rights under the Fourth and Fifth Amendments. The district court rejected Troxler's first contention, but upheld its constitutional challenges.

With respect to Troxler's first contention, we note, as did the district court, that under Section 1265 "banned hazardous substances" are liable to seizure by process pursuant to a libel of information, and that an article may be a "banned hazardous substance" under either Section 1261(q)(1)(A) or Section 1261(q)(1)(B). Section 1261(q)(1)(A), upon which the Commission relied in this case, defines a "banned hazardous substance" to be "any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted." A "hazardous substance" is defined in Section 1261(f)(1) in pertinent part as follows:

> (A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable or combustible, or (vi) generates pressure through decomposition, heat, or other means, if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.
>
> (B) Any substances which the Secretary by regulation finds, pursuant to the provisions of section 1262(a) of this title, meet the requirements of subparagraph (1)(A) of this paragraph.

The Commission contends that TRIS meets the definition of "hazardous substance" in Section 1261(f)(1)(A) because it is toxic within the meaning of Section 1261(g). This latter section provides that "[t]he term 'toxic' shall apply to any substance (other than a radioactive substance) which has the capacity to produce personal injury or illness to man through ingestion, inhalation, or absorption through any body surface."

Under FHSA a substance may be a "banned hazardous substance" either by meeting the statutory definition in Section 1261(q)(1)(A), or by being so defined by regulation after formal rule-making under Sections 1261(q)(1)(B) and (q)(2). Similarly, a substance may be a "hazardous substance" if it meets the statutory definition contained in Section 1261(f)(1)(A) or has been so defined by regulation under 15 U.S.C. § 1262(a). From our examination of the statutory structure, it appears that the Commission may proceed against a substance by regulation pursuant to its rule-making authority, or may go directly to court upon its allegation that the goods or substances meet the statutory definition under Section 1261(q)(1)(A). We agree with the district court that where the Commission elects to follow the latter course in a Section 1265 proceeding, the issue of whether TRIS-treated children's sleepwear is, in fact, a "banned hazardous substance" is a question to be later determined in a hearing on the merits in the condemnation proceeding.

While the district court rejected Troxler's contention that an appropriate administrative regulation is a prerequisite to any enforcement action, it concluded that the seizure in this case was violative of the Fourth Amendment because the Commission did not establish probable cause and because an independent judicial officer did not review the allegations prior to the seizure; and that Troxler was denied its Fifth Amendment due process rights because the seizure was not followed by an immediate post-seizure hearing. We do not agree with the district court for we find little substantiality in Troxler's constitutional arguments.

Section 1265 is modelled after Section 304 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 334, and provides that "the procedure in cases under this section shall conform, as nearly as may be, to the procedure in admiralty; except that on demand of either party any issue of fact joined in any such case shall be tried by a jury." The Commission in this case com-

plied with the statute as well as the Admiralty procedure prescribed in Supplemental Rule C of the Federal Rules of Civil Procedure, filing a verified complaint which described the articles of merchandise and averred that they were "banned hazardous substances" subject to seizure and condemnation under FHSA. In dealing with the issue of probable cause under Section 304 of the Food, Drug and Cosmetic Act, Judge Wright, in *Founding Church of Scientology v. United States,* 133 U.S.App.D.C. 229, 233, 409 F.2d 1146, 1150 (1969), *cert. denied* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969), observed:

> Though warrants are generally necessary for arrests of persons and for searches, the warrant requirement has not traditionally been imposed upon seizures of the type involved in this case—attachment of property in the course of civil proceedings. This does not mean that the Fourth Amendment does not apply to such seizures, in both its substantive prohibition against unreasonable seizures and its procedural requirement of judicial or quasi-judicial review of the decision to seize. It means merely that judicial restraint is imposed through a different form of proceeding than the showing of probable cause before a magistrate. In the case of ordinary civil attachments, the details of such proceedings are, even in the federal courts, left to state law. In cases in admiralty, the process is governed by the Admiralty Rules, lately recodified as a supplement to the Civil Rules. (Footnotes omitted).

We are in accord with this observation, and in our opinion the Commission's adherence to the Admiralty Rules provided sufficient probable cause for the issuance of the warrant of seizure in this case. *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), upon which the district court relied, is inapposite for that case dealt with the warrantless search of a private home, while the case before us involves a seizure pursuant to a warrant in a store which concededly was open to the public.[1]

With respect to the Fifth Amendment issue, Section 1265, like Section 304 of the Food, Drug and Cosmetic Act, is designed to provide an expeditious remedy of seizure and condemnation to protect the public from substantial injury and illness because of hazardous substances, and we find the answer to Troxler's due process claims in *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950). In that case Section 304 of the Food and Drug Act was challenged under the due process clause upon grounds similar to those advanced by Troxler that the party was entitled to a hearing upon the issue of probable cause in advance of the seizure. The Court, noting that the statute directed that the procedure should conform "as nearly as may be, to the procedure in admiralty," stated that "[w]hen the libels are filed the owner has an opportunity to appear as a claimant and to have a full hearing before the court. This hearing, we conclude, satisfies the requirements of due process." 339 U.S. at 598, 70 S.Ct. at 872. Troxler suggests that *Ewing* has been eroded by a series of cases beginning with *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), requiring notice and hearing in connection with governmental actions that affect individual liberty and property interests. However, *Goldberg* cited *Ewing* as an example in its observation "that some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." 397 U.S. at 263, 90 S.Ct. at 1018 n.10. Our examination of the cases addressing the due process issue in this context indicates that they have consistently recognized the continuing viability of *Ewing,*[2] and we accept it as controlling authority in this case.

---

1. Since the premises in which the merchandise was seized were open to the public, there was no impermissible governmental intrusion in this case, and the seizure "did not involve an invasion of privacy." *See G. M. Leasing Corp. v. United States,* 429 U.S. 338, 351, 97 S.Ct. 619, 628, 50 L.Ed.2d 530 (1977).

2. *See Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 612, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); *Cale-*

Since we find no merit in Troxler's constitutional claims, the judgment of the district court quashing the warrant of seizure must be reversed and this case remanded for further proceedings consistent with this opinion.

\* \* \*

Acting upon the Government's motion, we granted a stay of the order of the district court pending disposition of this appeal, and in our order granting the stay we remanded the case to the district court for the limited purpose of determining the appropriate disposition of the sleepwear in the event we should hold that it was subject to condemnation as a banned hazardous substance. Specifically, we requested the views of the district court on the facts posited as to whether, pursuant to Section 1265(c), the goods should be forfeited for destruction, forfeited for sale by the Government, or whether Troxler, under appropriate bond and supervision of the Commission, should be permitted to sell the goods in foreign commerce with the proceeds of the sale enuring to the benefit of Troxler.

■ Upon remand, the district court filed a memorandum decision in which it observed that the record was inadequate to permit an intelligent exercise of its discretion with respect to the alternative dispositions under Section 1265(c). The court, however, considered the question of whether it had the authority to order that the seized goods be released to Troxler for sale in foreign commerce and concluded that it did not, and Troxler has appealed from its determination on this point.

■ We agree with the conclusion of the district court. Under Section 1265(c), the court may order that the condemned articles be destroyed or sold by the Government, or, as a third alternative, may direct that they be delivered to the owner, under appropriate bond and supervision, "to be destroyed or brought into compliance with the provisions of" FHSA. Troxler contends that the sale of the condemned goods in foreign commerce would constitute bringing them into compliance with the FHSA under this third alternative. In *United States v. Kent Food Corporation,* 168 F.2d 632, 634 (2 Cir. 1948), the Second Circuit had occasion to consider a similar question under the parallel language of Section 304 of the Food, Drug and Cosmetic Act, and rejected the argument advanced by Troxler, stating:

> The power specifically given to the court to do only certain things upon condemnation of the articles excludes the possibility of according them a status they might originally have had, had they never been introduced into interstate commerce for the purpose of domestic sale. The clear purpose of the statute appears to be to visit the statutory penalties or sanctions upon articles thus found to be in violation of its provisions.

■ Counsel for Troxler, however, suggests that *Kent* is inapposite because of differences between the export provisions of the Food, Drug and Cosmetic Act and those of the FHSA. Concededly, there are differences in the statutory language, but we do not regard them as significant. While Section 1265(c) exempts from seizure any hazardous substance appropriately intended for export, there is no indication that articles which have been offered for sale in domestic commerce can avoid the consequences of seizure and forfeiture by resorting to export after condemnation has occurred. Accordingly, we affirm the district court on this point.

No. 78–1066—REVERSED and REMANDED.

No. 78–1110—AFFIRMED.

In view of our disposition of the appeal, the Government's petition for a writ of mandamus (No. 78–1142) is dismissed.

---

ro-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *Fuentes v. Shevin,* 407 U.S. 67, 92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Natick Paperboard Corp. v. Weinberger,* 525 F.2d 1103,

1107 (1 Cir. 1975), *cert. denied* 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976); *United States v. An Art. Consisting of Boxes of Clacker Balls,* 413 F.Supp. 1281, 1283 n.1 (E.D.Wis.1976).