**UNITED STATES of America**

v.

**Richard Porter McMICHAEL.**

**Crim. No. K–81–00467.**

United States District Court, D. Maryland.

March 1, 1982.

---

J. Frederick Motz, U. S. Atty., and Steven A. Allen and Lawrence L. Hooper, Jr.,

Asst. U. S. Attys., Baltimore, Md., for the U. S.

Robert B. Schulman, Baltimore, Md., for defendant.

**FRANK A. KAUFMAN, Chief Judge.**

Defendant McMichael, charged with conspiracy to distribute and with distribution of cocaine,[1] was arrested on October 5, 1981, at approximately 11:00 p. m. by Special Agent ("SA") DiGravio of the Federal Drug Enforcement Administration ("DEA"). At the time of arrest DiGravio took from McMichael the keys to a 1969 Buick Skylark automobile (the "Skylark") and informed McMichael that the automobile was seized for violation of the federal narcotics laws. After his arrest, McMichael was booked and interrogated by DiGravio and other DEA agents and taken, at or about 5:00 a. m. on October 6, 1981, before a judicial officer. At approximately 2:00 p. m. on October 6, 1981, SA McKinney of the DEA took physical possession of the Skylark, DiGravio having left the keys therefor at the DEA's Washington Field Office. Subsequently, on October 6, 1981, DEA agents conducted an inventory search of the Skylark.

On December 10, 1981, the Government entered into plea agreements with McMichael's two co-defendants, namely, Hess and Steinfuhrer.[2] During debriefing, Hess re-

---

1. McMichael is one of three defendants, the others being Hess and Steinfuhrer. Originally all three were named in each of four counts of the indictment and charged with one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and with three counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Very shortly before the commencement of the trial held in December, 1981, Hess and Steinfuhrer pleaded guilty and testified at trial against McMichael. The jury in the December, 1981 trial found McMichael not guilty under count 2 and was unable to reach verdicts with regard to counts 1, 3 and 4. The second trial is scheduled to convene this week. That trial will proceed with regard only to counts 3 and 4. The Government has dismissed count 1 with the approval of the Court. During the last several weeks, McMichael's motion to suppress certain statements allegedly made shortly after his arrest has been denied. The Government had not

sought to use those statements in the first trial. McMichael has also moved to suppress the fruits of the seizure and search of a car he drove on the two dates mentioned, respectively, in counts 3 and 4 of the indictment, namely, September 23, 1981 and October 5, 1981. It is that motion which is the subject of this opinion. During the first trial, McMichael's counsel unsuccessfully moved to suppress those same fruits but did so without bringing to this Court's attention the opinions filed within the last two years by the First and Third Circuits which are discussed *infra*. In fairness, it is noted that McMichael's counsel, until the eve of the first trial, had no reason to believe that Hess and Steinfuhrer would plead guilty and cooperate with the Government against McMichael. Accordingly, the first trial went forward on a different basis than counsel for McMichael and also government counsel had anticipated.

2. *See* n.1 *supra.*

lated to SA Brown of the DEA that he had accompanied McMichael on one occasion to Washington National Airport to pick up a shipment of cocaine from Florida. Hess further related that at that airport, McMichael had picked up an Airport to Airport Express Mail package mailed from Video Technics in Miami, Florida, to Vitron Distributors at the Washington National Airport. Subsequent DEA investigation revealed that both Video Technics and Vitron Distributors are nonexistent entities. Hess stated that McMichael's practice was to mail packages of money wrapped in aluminum foil to Florida and to get back packages of cocaine wrapped in the same manner. Steinfuhrer told Brown that McMichael was afraid that DEA agents would search the trunk of the Skylark.

As a result of receiving that information from Hess and Steinfuhrer, Brown and DiGravio conducted an investigatory search of the trunk of the Skylark on December 11, 1981, and found two envelopes containing pieces of aluminum foil which matched the description given by Hess. The two envelopes recovered from the trunk of the Skylark on December 11, 1981, bore Airport to Airport Express Mail labels addressed to Vitron Distributors from Video Technics in Miami, Florida. Pursuant to procedures which govern Express Mail, the person who receives the same is required to initial the label affixed to the envelope. The labels on the two envelopes recovered from the trunk of the Skylark on December 11, 1981, reflect receipt by "R.P.Mc." The Government contended during the first trial and continues to assert that McMichael placed his initials on the said envelopes when he receipted for them and their contents, that those envelopes contained cocaine, and that some or all of the cocaine, which is the subject of the alleged October 5, 1981 sale, was contained in those envelopes.

DiGravio testified during the first trial and also a few weeks ago during an evidentiary motion hearing with regard to the within motion to suppress. During the mistrial, DiGravio testified that he had seized the Skylark during the night of October 5–6, 1981. However, during the recent motion hearing, DiGravio testified that McKinney seized the Skylark physically at approximately 2:00 p. m. on October 6, 1981. The latter testimony is accepted as accurate.

McMichael states three grounds in support of his pending motion to suppress the fruits of the seizure and search of the Skylark: (1) that automobile was not used to "facilitate" the commission of the crime within the meaning of 21 U.S.C. § 881(a)(4);[3] (2) the warrantless seizure of the automobile was unlawful; and (3) the warrantless search of the automobile on December 11, 1981, was unlawful.[4]

### Further Facts and the Word "Facilitate"

■ The following further facts are relevant and material with regard to the pending motion to suppress: On the night of September 23, 1981, DiGravio observed, from a car which he was driving, McMichael drive the Skylark[5] on to a parking lot adjacent to the Wheaton Plaza Shopping Center in Wheaton, Maryland. DiGravio observed

---

3. The relevant provisions of that statute are set forth *infra* in the body of this opinion.

4. Even if the seizure on October 6, 1981, was unlawful, the inventory search on October 6, 1981, which was accomplished without a warrant, may have been lawful. *See United States v. Pappas*, 613 F.2d 324, 330–31 (1st Cir. 1979) (en banc) and page 962 *infra*. However, the Government did not offer during the mistrial any evidence flowing directly or indirectly from that inventory search and does not intend so to do during the upcoming second trial. Defendant concedes that the search on October 6, 1981, was an inventory search; the Government concedes that the search on December 11,

1981, was an investigatory search. For a discussion of the legal differences flowing from these two types of searches, *see, e.g., United States v. Johnson*, 572 F.2d 227 (9th Cir. 1978).

5. The Skylark is seemingly titled in the name of one of McMichael's parents. However, McMichael apparently had rather full use of the car. The Government, under those conditions, has conceded standing on the part of McMichael to challenge the seizure and search in question herein. *See, e.g., United States v. Portillo*, 633 F.2d 1313, 1316–17 (9th Cir. 1980); *United States v. Ochs*, 595 F.2d 1247, 1252–53 (2d Cir. 1979).

McMichael drive around said parking lot and stop several times at locations from which McMichael could observe a prearranged transaction involving the purchase of cocaine from Hess by Brown acting in an undercover capacity. Hess had previously informed Brown that the source of the cocaine would be present on September 23, 1981, in a Buick. DiGravio was thus on the lookout for a Buick and subsequently observed McMichael in the Skylark. After the September 23, 1981, transaction between Brown and Hess had been completed, DiGravio observed McMichael in the Skylark follow Hess in another car to a Donut King where DiGravio overheard Hess and McMichael discuss the cocaine sale to Brown.

McMichael's said use of the Skylark on September 23, 1981, constituted use of the car "in any manner to facilitate" the cocaine "sale" on that date from Hess to Brown within the meaning of 21 U.S.C. § 881(a)(4), which provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.

. . . .

(4) All conveyances, including ... vehicles ... which are used, or are intended for use, to transport, or in any manner to <u>facilitate</u> the transportation, sale, receipt, possession, or concealment of property described in paragraph (1)

. . . .

(Underlining supplied.) The case law leaves little doubt that the use of the Skylark by McMichael to act as a lookout on September 23, 1981, constituted use of that vehicle "in any manner to facilitate" the cocaine sale.[6]

On October 5, 1981, at approximately 10:15 p. m., DiGravio observed McMichael come out of McMichael's home and get into the Skylark. DiGravio, in the car he was driving, followed McMichael in the Skylark for long enough to ascertain that McMichael was driving the Skylark around McMichael's neighborhood and was, in the opinion of DiGravio, attempting to determine whether or not he was being followed and watched.[7] DiGravio stopped following the Skylark and waited close to McMichael's home until McMichael returned in the Skylark approximately fifteen minutes after McMichael's earlier entry into that car. McMichael parked the Skylark in front of Hess's house which was several doors from McMichael's home. McMichael got out of the Skylark, met Hess and the two of them got into another automobile which Hess proceeded to drive. DiGravio followed Hess and McMichael to the Dart Drug parking lot in Wheaton, Maryland. At that parking lot, DiGravio observed Hess get out of the car Hess had been driving and meet, again by prearrangement, Brown acting in an undercover capacity, to make a sale of cocaine.

**6.** *See, e.g., United States v. One 1974 Cadillac Eldorado Sedan, etc.*, 548 F.2d 421 (2d Cir. 1977). "Use as a look-out or decoy vehicle in a convoy will also render the vehicle subject to forfeiture." *United States v. One 1972 Datsun, etc.*, 378 F.Supp. 1200, 1202 (D.N.H.1974) (Bownes, J.) (citing case support therefor). While the use of an automobile merely as a means of locomotion to reach the scene of an illegal activity or in a manner not directly connected with the sale of drugs may not constitute such facilitation, *see United States v. One 1972 Chevrolet Corvette*, 625 F.2d 1026 (1st Cir. 1980); *United States v. One 1974 Cadillac Eldorado, etc.*, 575 F.2d 344 (2d Cir. 1978); *Howard v. United States*, 423 F.2d 1102 (9th Cir. 1970); *Platt v. United States*, 163 F.2d 165 (10 Cir. 1947); *United States v. One 1972 Datsun, etc., supra; United States v. One 1970 Buick Riviera, etc.*, 374 F.Supp. 277 (D.Minn. 1973), the use of the Skylark on September 23, 1981, and again on October 5, 1981, *see* the discussion *infra*, was for purposes of countersurveillance and/or of avoiding surveillance relating to the two cocaine sales on those dates— the sales which constitute the unlawful activities which are the subject of counts 3 and 4 of the indictment. Such use of the Skylark on each such date was "antecedent" to the sale on that date, *United States v. One 1972 Chevrolet Corvette*, 625 F.2d at 1029, and was in any event directly related to the drug sales.

**7.** DiGravio has been a DEA agent for eleven years.

McMichael remained in Hess's car in a position enabling McMichael to watch the transaction between Hess and Brown. DiGravio, after that transaction was completed, arrested McMichael. Brown arrested Hess, and other DEA agents arrested Steinfuhrer who was also present on the parking lot.

Under the above facts, the use of the Skylark on October 5, 1981, by McMichael to try to determine whether or not he was being watched and to avoid surveillance constituted use of that car "in any manner to facilitate" the cocaine sale on October 5, 1981, within the meaning of 21 U.S.C. § 881(a)(4).[8]

### Seizure and Search

The issues concerning seizure are considerably more difficult than the issue of facilitation discussed above.[9] 21 U.S.C. § 881(b) reads as follows:

> (b) Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, except that seizure without such process may be made when—
>
> (1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
>
> (2) the property subject to seizure has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under this subchapter;
>
> (3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

> (4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of this subchapter.
>
> In the event of seizure pursuant to paragraph (3) or (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly.

■ Subsection (1) is inapplicable. While seizure of the keys to the Skylark occurred incident to McMichael's arrest, that apparently does not constitute seizure of the car itself. *See Cardwell v. Lewis*, 417 U.S. 583, 591 n.6, 94 S.Ct. 2464, 2470 n.6, 41 L.Ed.2d 325 (1974), in which Justice Blackmun, in a plurality opinion, wrote:

> Petitioner contends that Lewis' car keys and the parking lot claim check were seized in plain view as an incident to his arrest, and that this seizure served to transfer constructive possession of the vehicle which could then be searched and seized as an instrumentality of the crime. We feel that the District Court and the Court of Appeals were correct in rejecting this argument. Irrespective of the plain-view or instrumentality analyses, the concept of constructive possession has not been found to justify the search or seizure of an item not in actual possession.

The seizure of the Skylark itself, at 2:00 p.m. on the afternoon of October 6, 1981, about fifteen hours after McMichael's arrest, did not take place incident to that arrest. *See, e.g., Preston v. United States*, 376 U.S. 364, 367–68, 84 S.Ct. 881, 883–84, 11 L.Ed.2d 777 (1954). Thus, subsection (1) is of no aid to the Government herein.

The Government does not contend that subsections (2) and (3) are applicable, but does vigorously assert the applicability of subsection (4). That latter provision has been the subject of sharply divergent positions taken in recent years by certain courts and judges, including Chief Judge Coffin of

---

**8.** *See* note 6 *supra*.

**9.** "[T]he decisions of [the Supreme Court] dealing with the constitutionality of warrantless searches, especially when those searches are of vehicles, suggest that this branch of the law is something less than a seamless web." *Cady v. Dombrowski*, 413 U.S. 433, 440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973) (Rehnquist, J.), *quoted in United States v. Johnson*, 572 F.2d 227, 230 n.6 (9th Cir. 1978).

the First Circuit, Judge Campbell of that Court, Judges of the Third Circuit and Chief Judge Lay of the Eighth Circuit. In *United States v. Pappas,* 600 F.2d 300 (1st Cir. 1979), a firearm was seized during the search of Pappas's automobile after the vehicle had been seized without a warrant pursuant to subsection (4) of 21 U.S.C. § 881(b). A DEA agent seized the car keys at the time of Pappas's arrest and the car was immediately taken into custody. The firearm was discovered two days later in the trunk of the car by a DEA agent during a search of the car. Judge Campbell held the warrantless seizure constitutional as an exception to the warrant requirement of the Fourth Amendment, quoting the following passage from Judge Friendly's opinion in *United States v. Francolino,* 367 F.2d 1013, 1022 (2d Cir. 1966), *cert. denied,* 386 U.S. 960, 87 S.Ct. 1020, 18 L.Ed.2d 110 (1967):

> "We realize that upholding the validity of the statute as so construed amounts to recognizing that Congress, in aid of its decree of forfeiture, may in effect create a further exception to the requirement of a search warrant, limited to vehicles that have carried or are carrying contraband and subject to the existence of reasonable cause, but without a requirement of incidence to prior lawful arrest or a showing of impracticability of obtaining a warrant due to the motion of the vehicle. But we cannot recall too often that the Fourth Amendment bans only unreasonable searches and seizures. We would hesitate to decide, particularly in the light of the dictum in *Boyd* [*v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886),*] and what we deem the holding in *Carroll* [*v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)], that Congress here exceeded its constitutional powers in dispensing with a search warrant in the case of vehicles which are reasonably believed and in fact are transporting or have transported forbidden goods over public highways, although a citizen's person, his home or office could not be searched without a warrant and a more stringent rule applies even to vehicles not carrying or having carried contraband. See Barrett, Personal Rights, Property Rights, and the Fourth Amendment, 1960 Supreme Court Review 46, 65."

(Footnote omitted.)

Judge Campbell also cited subsequent Second Circuit cases which have followed the *Francolino* view and noted that "[o]ther circuits have followed *Francolino* as well," *Pappas,* 600 F.2d at 303, citing cases of the Third, Sixth, Eighth and Tenth Circuits, but noting the contrary view of the Ninth Circuit expressed in Judge Duniway's opinion in *United States v. McCormick,* 502 F.2d 281 (9th Cir. 1974). Judge Campbell reviewed and analyzed a number of Supreme Court opinions, commenting (at 305) that—

> The automobile exception as currently understood would therefore seem to rest less on the exigency of the specific situation than on "the diminished expectation of privacy which surrounds the automobile."

and that—

> On that premise, it would be understandable that where the car owner's expectation of privacy is least—*i.e.,* when the car is left parked in a public place—and the government's interest is most basic—*i.e.,* a statutory property right—a warrantless seizure could generally be sustained on a showing of probable cause alone.

Judge Campbell joined by Senior Judge Aldrich and District Judge Gignoux of the United States District Court of the District of Maine, sitting by designation, concluded that the seizure and the search were valid.

On rehearing before the First Circuit en banc, Chief Judge Coffin, joined by Judge Bownes, took a different position in a 2–to–1 majority opinion with Judge Campbell concurring only in the result. Judge Coffin wrote:

> We find no holdings, by either appellate or district courts, that squarely address the proper scope of warrantless seizures permissible under subsection 881(b)(4). In most of the cases applying this exception, federal agents had probable cause to believe that the vehicle in

962

question was being used to transport contraband at the time of the seizure. [Citations omitted.] Pappas urges us to hold that such contemporaneous probable cause is a necessary prerequisite of a warrantless seizure under subsection 881(b)(4). In support of this assertion, Pappas cites Judge Lay's dissenting opinion in *O'Reilly v. United States*, 486 F.2d 208, 214 (8th Cir.), *cert. denied*, 414 U.S. 1043, 94 S.Ct. 546, 38 L.Ed.2d 334 (1973). Judge Lay argued:

"The exceptions under subsection 4 dealing with 'probable cause' would be self-defeating if they meant that process to seize property is not required in *every case* where the property has been used in violation of the Act. If the process requirement has any meaning it must be that process is necessary unless there exists probable cause that Section 881(a) is being *contemporaneously* violated and the exigencies of the surrounding circumstances make the requirement of obtaining process to seize the vehicle unreasonable and unnecessary." (Emphasis in original.) [10]

*United States v. Pappas*, 613 F.2d 324, 327 (1st Cir. 1979) (en banc) (footnote omitted).

Judge Coffin further stated (at 327): Thus, we now face for the first time the task of determining whether the statute authorizes a warrantless seizure when the events providing the probable cause are remote in time from the actual seizure of the property and no exigent circumstances necessitate prompt action.

(Footnote omitted.) Judge Coffin then proceeded to analyze the statute, concluding that the subsection (4) exception, if "read literally," would cover all cases covered by the introduction to section 881(b) itself, *i.e.*, "every case requiring process would also qualify for the exception to the requirement," (*id.* at 328), and would require decision on the constitutional question posed in *Cardwell v. Lewis*, 417 U.S. 583, 596–99, 94 S.Ct. 2464, 2472–74, 41 L.Ed.2d 325 (1974),

namely, "whether the Fourth Amendment permits the warrantless seizure of an automobile based only upon a federal agent's probable cause to believe that the government has a superior possessory interest in the vehicle; and if it does not, to hold the statute unconstitutional." *Id.* 613 F.2d at 329 & n.9 (footnote omitted). However, Judge Coffin, after finding the seizure unlawful, also wrote (at 330–31):

A warrantless inventory search following seizure of a vehicle is reasonable because it is conducted for benign purposes—protection of the owner's property and protection of law enforcement officials from liability for theft—not to uncover evidence of criminal activity. [Citations omitted.] Once a vehicle has been seized, especially if there is probable cause to believe it is subject to forfeiture, the justification for an inventory search exists even if the antecedent seizure is eventually found to be illegal. Thus, a true inventory search, one that is not a pretext for gathering evidence, is independent of the seizure that precedes it. We do not think that the search of Pappas's car necessarily became unreasonable, and therefore unconstitutional, because the car was illegally seized. Since the DEA agents had probable cause to believe that the government had a right to possession of the car, they were entitled to inventory its contents.

(Footnotes omitted.) Therefore, because the seizure was not in violation of "any prior judicial construction" of section 881(b)(4) and "was in accordance with standard DEA procedures," *id.* at 331, Judge Coffin, relying on *Michigan v. DeFillippo*, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), concluded that the exclusionary rule did not require the suppression of the fruits of the search of Pappas's car, *i.e.*, the firearm, despite the unlawful seizure, warning (613 F.2d at 331 n.14) that "[f]uture violations of the timeliness and exigency requirement" would not be so treated. [11]

10. The majority opinion in *O'Reilly* was listed by Judge Campbell in the first *Pappas* opinion of the First Circuit as in accord with *Francolino.*

11. *See also United States v. Williams*, 622 F.2d 830, 840–47 (5th Cir. 1980).

In *United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154 (3d Cir. 1981), and *United States v. Bush,* 647 F.2d 357 (3d Cir. 1981), the Third Circuit largely adopted Judge Campbell's approach in the first *Pappas* opinion and in his concurrence in the second *Pappas* opinion, pointing out that the introductory paragraph of section 881(b) requires a resort to the judicial process to obtain a warrant and that even if the Government is absolutely entitled to the issuance of such warrant upon the Government's application, that resort to judicial process is an extra step not required when subsection (4) is utilized. As to Judge Coffin's constitutional worries, the Third Circuit adopted Judge Friendly's views as expressed in *Francolino.*

In *United States v. McCormick, supra,* Judge Duniway, after analyzing the Supreme Court's opinions with regard to seizures and searches of automobiles, handed down after *Francolino,* including *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), concluded, over a dissent by Judge Wallace, that a warrantless seizure under a combination of 49 U.S.C. § 782 and 49 U.S.C. § 781(a) [12] was not constitutional.[13]

The Fourth Circuit to date has seemingly not determined the issues upon which *Francolino* and *McCormick* part company. In *United States v. Articles of Hazardous Substance,* 588 F.2d 39 (4th Cir. 1978), Judge Field, writing for himself, Judges Winter and Widener, in a case involving only a civil forfeiture and relying extensively on Judge Wright's views in *Founding Church of Scientology v. United States,* 409 F.2d 1146, 1150 (D.C.Cir.), *cert. denied,* 396 U.S. 963, 90 S.Ct. 434, 24 L.Ed.2d 427 (1969), also a civil forfeiture case, reversed Judge Gordon's suppression of the warrantless seizure of evidence.[14] But *Articles of Hazardous Substance* did not involve or relate to an arrest, and the search and seizure under consideration in that case had no direct criminal effects. Herein, as Judge Coffin noted in the First Circuit's second *Pappas* opinion, the seizure and search took place "in the context of a criminal or quasi-criminal proceeding" (613 F.2d at 328) and will result, if held valid, in the use in a criminal trial of evidence seized and obtained in a warrantless search, outside of any recognized exception to the Fourth Amendment, but for the determination by the Congress that a civil forfeiture is permitted and may be instituted by a seizure and search without a warrant. The fact that such a warrantless seizure and search are valid in a civil context, as the Fourth Circuit determined in *Articles of Hazardous Substance, supra,* does not necessarily mean that the

**12.** 49 U.S.C. § 782 provides in pertinent part that "[a]ny ... vehicle ... which has been or is being used in violation of any provision of section 781 ... shall be seized and forfeited." 49 U.S.C. § 781(a) provides:

    (a) It shall be unlawful (1) to transport, carry, or convey any contraband article in, upon, or by means of any vessel, vehicle, or aircraft; (2) to conceal or possess any contraband article in or upon any vessel, vehicle, or aircraft, or upon the person of anyone in or upon any vessel, vehicle, or aircraft; or (3) to use any vessel, vehicle, or aircraft to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article.

49 U.S.C. § 781(b) defines "contraband article" to mean, *inter alia,* "[a]ny narcotic drug." Cocaine is a narcotic drug. *See* 21 U.S.C.

§ 802(16). The Government, however, has not relied in this case upon 49 U.S.C. §§ 781 & 782. In any event, however, those sections and 21 U.S.C. § 881(b), to the extent they authorize warrantless seizures based only upon a law enforcement officer's determination of probable cause, must seemingly be analyzed in the same manner. Indeed, the cases do not appear to make any distinction between them.

**13.** *Cf. United States v. Pruett,* 551 F.2d 1365, 1369–70 (5th Cir. 1977).

**14.** *United States v. Articles of Hazardous Substance,* 444 F.Supp. 1260 (M.D.N.C.1978). *See also Melendez v. Shultz,* 356 F.Supp. 1205 (D.Mass.) (three-judge court), *appeal dismissed for lack of jurisdiction,* 486 F.2d 1032 (1st Cir. 1973). In *Melendez,* the seizure apparently took place in a criminal context.

same are valid in what is essentially a criminal context with the civil forfeiture being the tail to the criminal dog. Rather, the additional exception to the Fourth Amendment's warrant requirement which Judge Friendly recognized as existing in *Francolino* must be relied upon to validate the within seizure. That poses the choice between *Francolino* and *McCormick*—and between the views of Judges Coffin and Lay and those of Judge Campbell and the Third Circuit. In the absence of Fourth Circuit case law, this Court is relatively free, at this moment, to opt as it deems appropriate. There is one case in this District, an unpublished opinion of Judge Jones in *United States v. Kemp*, Criminal Nos. J–81–0187 and J–81–0188 (D.Md. July 9, 1981), presently before the Fourth Circuit (No. 81–5223) on appeal by the Government from Judges Jones's Order suppressing certain evidence. The seizure in that case was much further removed in point of time from the arrest than is the situation herein. However, in essence, Judge Jones chose to follow Judge Coffin's approach in the second *Pappas* opinion. While this Court believes that the literal reading of 21 U.S.C. § 881(b)(4) urged by the Government is not inconsistent with the introductory language in 21 U.S.C. § 881(b), that literal reading does raise the constitutional issue posed by Judge Coffin and decided adversely to the Government's contentions herein by Judge Duniway in *McCormick*. In order to avoid the serious constitutional question posed by a warrantless seizure pursuant to 21 U.S.C. § 881(a)(4), it is necessary to read into that subsection the requirement of "exigent circumstances." As both Judge Campbell, concurring in the second *Pappas* opinion, and the Third Circuit have noted, the legislative history of section 881 indicates that Congress "clearly intended to liberalize, not restrict, the existing authority of law en-

forcement officers to seize property used in contravention of the drug control laws." *United States v. Bush, supra,* 647 F.2d at 368. In that light, this Court adopts the views of Judge Campbell and of the Third Circuit as to the meaning of subsection (4) and reaches the merits of the serious constitutional question posed by it.

■ With considerable hesitancy, and with the greatest of respect for Judge Friendly's approach in *Francolino*, this Court will be governed by its concern about permitting the Congress, by the enactment of civil forfeiture provisions, to legislate an exception to the Fourth Amendment's warrant requirement in order to validate a warrantless seizure in a clearly criminal context—a seizure which was not required by any exigency and which was not linked in time, location, plain view or the like to an arrest. There is just no good reason why the DEA agents could not, at least in this case, have sought to obtain a warrant from a judicial officer to seize—and if the Government so desired, a warrant to search—the Skylark. Clearly, there would seem to have existed probable cause upon which to base application for the same. Accordingly, this Court holds that the warrantless seizure of the Skylark on October 6, 1981 violated the Fourth Amendment's warrant requirement.

The investigatory search herein on December 11, 1981 [15] would have been valid if the seizure had been valid, *United States v. Johnson, supra,*[16] and is invalid if the seizure, as this Court holds it is, is invalid, *see United States v. Pappas,* 613 F.2d at 330–31, unless the exclusionary rule is held inapplicable because the DEA agents acted in good faith. However, Judge Coffin also indicated (613 F.2d at 331 n.14) that Fourth Amendment violations in the future—here they occurred in September and October of 1981—and Judge Coffin's opinion was filed

---

**15.** *See* pp. 957–958 *supra.*

**16.** The issue of whether a warrantless investigatory search well after a valid civil forfeiture seizure is lawful was determined favorably to the Government in the *Johnson* case by the Ninth Circuit which, while expressing many doubts, reluctantly concluded that after such a

valid seizure, not only an inventory search, but a further investigatory search could be conducted without the issuance of any warrant. With similar reluctance, this Court would be prepared to follow that conclusion in *Johnson* for the reasons stated therein.

in December, 1979—would not be countenanced on the grounds that the DEA agents acted in good faith if they seized a vehicle without a warrant. Accordingly, the within warrantless seizure may not pass muster under the good faith approach.

For the reasons stated in this opinion, defendant McMichael's motion to suppress the fruits of the December 11, 1981 search of the Skylark will be granted in a separate Order filed today.